Nicholas A. Verderame (ABN 030683)
Plattner Verderame, PC
316 E. Flower Street
Phoenix, Arizona 85012
(602) 266-2002
NVerderame@PVAzLaw.com

Patrick S. Almonrode
Brown, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(201) 781-5701
patalmonrode@jtblawgroup.com

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tylor Kelley and Savannah Arteaga, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.: |
| Express Messenger Systems, Inc., d/b/a OnTrac, | |
| Defendant. | |

## COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

## COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs Tylor Kelley and Savannah Arteaga, individually and on behalf of all others similarly situated, by and through their attorneys, Brown, LLC and Plattner Verderame, P.C., bring this Collective Action Complaint against Defendant Express Messenger Systems, Inc., doing business as OnTrac (hereinafter "Defendant," "OnTrac," or the "Company"), and allege of their personal knowledge as to their own actions and observations, and upon information and belief as to all other matters, as follows:

## I.  PRELIMINARY STATEMENT

1.     Plaintiffs bring this action for Defendant's willful misclassification of its delivery drivers as independent contractors, resulting in violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq*.

2.     OnTrac offers package delivery services to addresses in Arizona, California, Nevada, Oregon, Washington, Utah, Colorado and Idaho.

3.     To provide this service, OnTrac hires individuals as delivery drivers. Plaintiffs Kelley and Arteaga were two such individuals.

4.     Although OnTrac purported to treat Plaintiffs and all its other delivery drivers as independent contractors, the drivers plainly were and are "employees" under the FLSA.

5.     OnTrac controlled and controls its drivers' operations; coordinates with customers in need of delivery services; negotiates prices; sets delivery timeframes; provides vehicles bearing OnTrac branding for the drivers' use; requires the drivers to wear OnTrac uniforms; and provides the workers, warehousing, and other infrastructure to support its delivery services.

6.     OnTrac controlled and controls Plaintiffs' and the other drivers' assignments and schedules, sets customer service standards, and provides its own electronic logging devices to track deliveries.

7.     The drivers are required to report to an OnTrac warehouse at a set time, accept all packages assigned to them, load their trucks without pay, and deliver the packages within specified timeframes.

8.     The drivers' pay is divorced from the hours worked: they are paid per delivery stop, per package delivered, a flat day rate, or some combination of these.

9.     Plaintiffs here were paid $1.80 per delivery stop, regardless of how many packages they had to deliver at each stop.

10.    As a result of Defendant's misclassification scheme, Plaintiffs and other delivery drivers were and are routinely denied: payment of minimum wages and overtime premiums; reimbursement of business-related expenses; the protections of workers' compensation benefits and unemployment insurance; Social Security contributions; and other benefits to which they are entitled under federal law.

11.    As a result of Defendant's misclassification of the drivers as independent contractors and taking deductions for use of the company vehicle, a "program fee," and a "cargo fee," in certain weeks certain drivers were paid less than minimum wage.

12.    Defendant did not pay any premium for overtime.

13.    Drivers who worked more than 40 hours in a week were paid in the same way for hours over 40 as they were when they worked fewer than 40 hours.

14.    Defendant's scheme impacts more than just its drivers: it deprives state unemployment insurance and workers' compensation funds of much-needed dollars, and reduces federal, state and local tax revenues by enabling the Company to avoid the withholdings and contributions the Company would have to make if it properly classified its drivers as employees.

15.    Per the Utah Worker Classification Coordinated Enforcement Council:

> Employee misclassification leads to "cost shifting"—costs of workplace injuries or unemployment that should be paid by an employer are shifted to the government, insurance companies and others. This results in higher health care costs, insurance premiums, is a drain on public assistance and charity, and loss of tax revenues.

"Who Suffers When Employees are Misclassified?" https://laborcommission.utah.gov/ worker-classification-coordinated-enforcement-council/ (last accessed Nov. 26, 2022).

## II.  JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought under the FLSA, a federal statute. The Court also has jurisdiction pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

17.     Defendant is a covered enterprise under the FLSA because it has annual sales exceeding $500,000 and has more than two employees.

18.     Defendant's employees, including the Plaintiffs in this case, engage in interstate commerce insofar as they handle and deliver packages that come from various states, and therefore they are also covered by the FLSA on an individual basis.

19.     This Court may properly maintain personal jurisdiction over Defendant because Defendant is headquartered in and does business in this state.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) and (d) because the Defendant is subject to personal jurisdiction in this District.

## III.  THE PARTIES

21.     Plaintiff Tylor Kelley is, and at all times relevant herein was, a resident of the State of Utah.

22.     Kelley was employed by OnTrac as a delivery driver within the State of Utah from approximately June 2020 until approximately May 2021. He was based out of OnTrac's warehouse and distribution center in Salt Lake City.

23.     Plaintiff Kelley's work required the performance of manual labor consisting of loading Defendant's trucks and transporting packages within the State of Utah.

24.     He was paid a flat rate of $1.80 per delivery stop, regardless of the number of packages he delivered at each stop.

25.     He was not paid for meal/rest breaks, and was not reimbursed for business-related expenses.

26.     Plaintiff Savannah Arteaga is, and at all times relevant herein was, also a resident of the State of Utah.

27.     Arteaga was employed by OnTrac as a delivery driver within the State of Utah, from approximately January 2021 until approximately May 2021. She was also based out of OnTrac's warehouse and distribution center in Salt Lake City.

28.     Plaintiff Arteaga's work required the performance of manual labor consisting of loading Defendant's trucks and transporting packages within the State of Utah.

29.     She was paid only a flat rate of $1.80 per delivery stop, regardless of the number of packages she delivered at each stop.

30.     She was not paid for meal/rest breaks, and was not reimbursed for business-related expenses.

31.     Defendant Express Messenger Systems, Inc., d/b/a OnTrac, is a Delaware corporation with its principal office in Chandler, Arizona. OnTrac operates warehouses, terminals, and distribution facilities in Utah, including the facilities in Salt Lake City at which Plaintiffs and other drivers were employed.

32.     Defendant also operates warehouses, terminal and distribution facilities in Arizona, California, Nevada, Oregon, Washington, Colorado and Idaho. Defendant misclassifies its drivers in those states as well.

## IV.  GENERAL ALLEGATIONS

33.     OnTrac markets itself as an affordable alternative for parcel logistics, working with business and retailers to ship small packages to consumers within Utah and various other states.

34.     As relevant here, once a package arrives at a local OnTrac warehouse, it is assigned to a local OnTrac driver for "last mile" delivery, using an OnTrac-branded van weighing less than 10,000 pounds.

35.   OnTrac purports to engage these "last mile" drivers as independent contractors, either directly or through third parties with which OnTrac contracts as Regional Service Providers. Thus, Plaintiffs and all other drivers were and are employed by OnTrac, either solely or jointly with a Regional Service Provider.

36.   Plaintiffs Kelley and Arteaga performed "last mile" delivery services within the State of Utah as employees of OnTrac.

37.   Plaintiffs Kelley and Arteaga would report to the Salt Lake City warehouse each workday. They would then load their trucks and then make their deliveries according to routes and schedules provided by OnTrac.

38.   Plaintiffs were paid $1.80 per delivery stop, and were *not* paid at all for the time they spent receiving their daily schedules and loading their trucks at the start of their days; nor were they paid for the time they spent unloading and checking in any packages they had picked up from customers or had been unable to deliver.

39.   OnTrac directly employed numerous delivery drivers in Utah, including Plaintiffs Kelley and Arteaga.

40.   Plaintiffs estimate that during their employment, between 70 and 100 drivers were based out of the Salt Lake City warehouse.

41.   Defendant misclassified all of its drivers as independent contractors.

42.   Either directly or through Regional Service Providers, OnTrac employed thousands of other delivery drivers in Utah and other states during the relevant statutory period, all of whom performed duties similar to those that Plaintiffs performed, and all of whom were subject to similar working conditions and constraints.

43.   OnTrac directly or indirectly exercised control over the wages, hours, and working conditions of Plaintiffs and the other drivers; had power to cause Plaintiffs and other drivers to work and the power to prevent them from working; and had the general right to control the relevant day-to-day aspects of the workplace behavior of Plaintiffs and other drivers.

44.   Plaintiffs and other drivers worked out of OnTrac-owned and managed

warehouses in Utah and in other states, where OnTrac managers, package handlers, and other OnTrac employees performed and/or managed package delivery operations.

45.     The services rendered by Plaintiffs and other drivers were and are an indispensable part of OnTrac's package delivery business.

46.     Plaintiffs and other drivers were (and are) required to make their deliveries within strict timeframes specified by OnTrac. The drivers have no control over and cannot adjust these timeframes.

47.     OnTrac required (and requires) its drivers to wear uniforms bearing OnTrac's logos and color scheme, and to maintain personal appearance standards established by OnTrac.

48.     OnTrac provided (and provides) vehicles for its drivers' use in performing their duties. These vehicles bear the OnTrac logo.

49.     Plaintiffs and other delivery drivers drove for OnTrac only. As a result, OnTrac controlled their opportunity for profit or loss.

50.     Plaintiffs and other delivery drivers did not perform managerial duties for OnTrac.

51.     The work performed by Plaintiffs and other delivery drivers did not require specialized or advanced skills, nor did it require a specialized degree.

52.     Plaintiffs and the other drivers did not bring their own tools to the job. Everything they needed to perform their work, including schedules, routes, handheld scanners, and the trucks themselves, were owned by Defendant and supplied to the drivers for their use.

53.     In fact, Plaintiffs were required to *pay for* the use of the Company trucks and scanners.

54.     Plaintiffs were charged $200 each week for use of the Company vehicles. These deductions were *not itemized*. Relator Kelley discovered the deductions were being taken when he "did the math" on some of his checks and realized that the total did not add up to the full $1.80 per stop.

7

55.    Plaintiffs were also charged a "program fee" of $29.50 and a "cargo fee" of $7.50 per weekly check; these deductions were itemized (but not explained).

56.    Plaintiffs were also required to pay for the fuel for their trucks, and were not reimbursed.

57.    Plaintiffs almost always worked more than 40 hours per week, and frequently worked as many as 60 hours per week, in order to meet OnTrac's demands.

58.    Plaintiffs were always paid $1.80 per stop with no premium for overtime.

59.    In fact, after the deductions that Defendant took, Plaintiffs sometimes made less than minimum wage for the week.

60.    OnTrac can and will terminate or reassign drivers it employs directly, and has the ability to require the termination or reassignment of drivers who are nominally employed by Regional Service Providers.

61.    Accordingly, whether a driver was contracted directly by OnTrac or by a Regional Service Provider, their work responsibilities and the policies and procedures governing their work did not and do not differ in any material way.

62.    In performing their duties, Plaintiffs and the other delivery drivers did not utilize any independent discretion or judgment, or make decisions with respect to matters of significance to the Company.

63.    On the contrary, Plaintiffs and the other similarly situated drivers employed by OnTrac and its Regional Service Providers simply provided transportation and delivery services in accordance with the management decisions and business policies established by OnTrac.

64.    OnTrac retains and exercises significant control over the details of drivers' schedules, routes, deliveries, the manner and means of how the delivery work is performed, and all necessary aspects of their working conditions.

65.    Plaintiffs and the other drivers are not free to negotiate their compensation with OnTrac; nor are they free to negotiate charges or schedules with the OnTrac customers to whom they make deliveries.

66.    As a result of all the foregoing, Plaintiffs and the other drivers were and are employees of OnTrac, either solely or jointly with a Regional Service Provider.

67.    As employees, Plaintiffs and the other drivers were and are entitled under the FLSA to be paid for all hours worked; to be paid an overtime premium for all hours worked beyond forty in a workweek; to be reimbursed for all business-related expenses; and to receive certain other benefits.

68.    To add insult to injury, Plaintiffs were not paid at all for their final three weeks of work for OnTrac, and are entitled to recover those unpaid wages.

## V.  COLLECTIVE ALLEGATIONS

69.    Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

70.    The FLSA requires that an employer pay its covered employees at least minimum wage for all hours worked. *See* 29 U.S.C. § 206. The FLSA also requires that the employer pay its covered employees at least time-and-a-half for all hours worked in excess of forty in a week. *See* 29 U.S.C. § 207.

71.    During the time Plaintiffs were employed by Defendant, they and other drivers were improperly classified as independent contractors. By means of this misclassification, Defendant purported to exempt Plaintiffs and the other drivers from the protections of the FLSA.

72.    Plaintiffs and these other employees often worked more than forty hours per week.

73.    Plaintiffs and these other employees were not paid time-and-a-half for all hours worked in excess of forty in a week.

74.    In fact, because they were not paid at all for loading and unloading time; because they were paid per delivery stop and not per hour; and because of their long hours and the numerous deductions from their pay, Plaintiffs and the other drivers made less than the minimum wage in some weeks.

75.     At all relevant times, Plaintiffs and other drivers employed by Defendant were and are similarly situated, in that they were and are subject to Defendant's common policies of (a) failing to pay their non-exempt employees at least minimum wage for all hours worked, and (b) failing to pay their non-exempt employees at least time-and-a-half for all hours worked in excess of forty per week.

76.     Plaintiffs bring their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and:

> *All current and former delivery drivers who worked for OnTrac, either directly or through any of its Regional Service Providers, at any time from the date three years prior to the filing of this Complaint to a date specified by the Court.*

(hereinafter referred to as the "FLSA Collective").

77.     OnTrac is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other members of the FLSA Collective.

78.     Excluded from the proposed FLSA Collective are executives, administrative and professional employees, including computer professionals and outside sales persons, of OnTrac or any of its Regional Service Providers.

79.     Consistent with Defendant's policies and practice, Plaintiffs and the members of the proposed FLSA Collective were not paid regular wages for all of the time that they worked, nor were they paid an overtime premium when they worked in excess of 40 hours in a workweek.

80.     Plaintiffs and the members of the proposed FLSA Collective performed all of their work at the behest of and/or with the full awareness of Defendant.

81.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay Plaintiffs and the members of the FLSA Collective at least minimum wage for all hours worked;

b.   Willfully failing to pay Plaintiffs and the members of the FLSA Collective, the appropriate wage premium for all hours worked in excess of 40 hours per workweek;

c.   Willfully depriving Plaintiffs and the members of the FLSA Collective of certain other employment benefits; and

d.   Willfully failing to reimburse Plaintiffs and the members of the FLSA Collective for business expenses that Defendant required them to incur.

82.   Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours work and an overtime premium for all hours worked in excess of 40 per workweek.

83.   Defendant's unlawful conduct is widespread, repeated, and persistent.

84.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b), in that (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

**COUNT I:  INDIVIDUAL FLSA VIOLATIONS**
*29 U.S.C. §§ 206, 216(b) - Failure to Pay Minimum Wage,*
*brought by Plaintiffs Kelley and Arteaga individually*

85.   Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

86.   At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

87.   At all relevant times, Plaintiffs were non-exempt employees of Defendant within the meaning of the FLSA.

88.   At all relevant times, Plaintiffs were employees who handled and/or used

goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.

89.     At all relevant times, Defendant (a) was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, (b) had annual sales exceeding $500,000, and (c) had more than two employees.

90.     29 U.S.C. § 206(a)(1) provides that "Every employer shall pay to each of [its] employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," at least minimum wage for all hours worked.

91.     Plaintiffs were not paid at all for the time they spent receiving their daily schedules and loading their trucks at the start of their workdays; nor were they paid for the time they spent at the end of their workdays, unloading and checking in any packages they had picked up from customers or had not been able to deliver.

92.     Plaintiffs also were not paid at all for their final three weeks at OnTrac.

93.     Defendant's conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

94.     Because Defendant willfully violated the FLSA, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

95.     As a result of the foregoing, Plaintiffs were illegally denied proper compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

### COUNT II:  INDIVIDUAL FLSA VIOLATIONS
*29 U.S.C. §§ 207, 216(b) - Failure to Pay Overtime Wages,*
*brought by Plaintiffs Kelley and Arteaga individually*

96.     Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

84.     At all relevant times, Defendant employed Plaintiffs within the meaning of the FLSA.

85.     At all relevant times, Plaintiffs were non-exempt employees of Defendant within the meaning of the FLSA.

97.     At all relevant times, Plaintiffs were employees who handled and/or used goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.

98.     At all relevant times, Defendant (a) was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, (b) had annual sales exceeding $500,000, and (c) had more than two employees.

99.     29 U.S.C. § 207(a)(1) provides, in pertinent part, that

> no employer shall employ any of [its] employees who in any workweek … is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for [their] employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which [they are] employed.

88.     Plaintiffs generally worked more than forty hours per week.

89.     Defendant failed to pay Plaintiffs at one-and-one-half times their regular rates of pay for all hours they worked each week in excess of 40, as required under the FLSA.

90.     Defendant's conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

91.     Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

92.     As a result of the foregoing, Plaintiffs were illegally denied proper compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT III:  COLLECTIVE FLSA VIOLATIONS
*29 U.S.C. §§ 206, 216(b) - Failure to Pay Minimum Wage,*
*brought by Plaintiffs Kelley and Arteaga on behalf of the FLSA Collective*

93.     Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

94.     At all relevant times, Defendant employed Plaintiffs and all members of the putative Collective within the meaning of the FLSA.

95.     At all relevant times, Plaintiffs and all members of the putative Collective were non-exempt employees of Defendant within the meaning of the FLSA.

96.     At all relevant times, Plaintiffs and all members of the putative Collective were employees who handled and/or used goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.

97.     At all relevant times, Defendant (a) was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, (b) had annual sales exceeding $500,000, and (c) had more than two employees.

98.     29 U.S.C. § 206(a)(1) provides that "Every employer shall pay to each of [its] employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," at least minimum wage for all hours worked.

99.     Plaintiffs and members of the putative Collective were not paid at all for the time they spent receiving their daily schedules and loading their trucks at the start of their workdays; nor were they paid for the time they spent at the end of their workdays, unloading and checking in any packages they had picked up from customers or had not been able to deliver.

100.    Defendant's conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

101.    Because Defendant willfully violated the FLSA, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

102.   As a result of the foregoing, Plaintiffs and all members of the putative Collective were illegally denied proper compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

### COUNT IV:  COLLECTIVE FLSA VIOLATIONS

*29 U.S.C. §§ 207, 216(b) - Failure to Pay Overtime Wages,*
*brought by Plaintiffs Kelley and Arteaga on behalf of the FLSA Collective*

103.   Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

84.   At all relevant times, Defendant employed Plaintiffs and all members of the putative Collective within the meaning of the FLSA.

85.   At all relevant times, Plaintiffs and all members of the putative Collective were non-exempt employees of Defendant within the meaning of the FLSA.

100.   At all relevant times, Plaintiffs and all members of the putative Collective were employees who handled and/or used goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.

101.   At all relevant times, Defendant (a) was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, (b) had annual sales exceeding $500,000, and (c) had more than two employees.

102.   29 U.S.C. § 207(a)(1) provides, in pertinent part, that

no employer shall employ any of [its] employees who in any workweek … is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for [their] employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which [they are] employed.

88.   Plaintiffs and all members of the putative Collective generally worked more than forty hours per week.

89.     Defendant failed to pay Plaintiffs and all members of the putative Collective at one-and-one-half times their regular rates of pay for all hours they worked each week in excess of 40, as required under the FLSA.

90.     Defendant's conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

91.     Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

92.     As a result of the foregoing, Plaintiffs and all members of the putative Collective were illegally denied proper compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(A)     A declaratory judgment that Defendant's wage practices alleged herein violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, and related regulations.

(B)     An order requiring Defendant to end all of the practices alleged herein to be illegal under the FLSA and related laws and regulations.

(C)     An order directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Plaintiffs and all members of the putative Collective.

(D)     Judgment for damages for all unpaid compensation pursuant to 29 U.S.C. § 216(b).

(E)     Judgment for liquidated damages pursuant to 29 U.S.C. § 216(b) in an amount equal to all unpaid compensation owed to Plaintiffs and all members of the putative Collective during the applicable statutory period.

(F)     An Incentive Award for Plaintiffs.

(G)     Judgment for any and all other recovery to which Plaintiffs and all members of the putative Collective may be entitled.

1    (H)    An order directing Defendant to pay Plaintiffs and all members of the putative
2    Collective prejudgment interest, reasonable attorney's fees, and all costs
connected with his action.

3

4    (I)    Such other and further relief as this Court may deem necessary, just and proper.

5                  **<u>DEMAND FOR TRIAL BY JURY</u>**

6        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

7    trial by jury on all questions of fact raised by the Complaint.

8    Dated: November 30, 2022.            Respectfully submitted,

9

10                             Nicholas A. Verderame (ABN 030683)
Plattner Verderame, PC

11                             316 E. Flower Street
Phoenix, Arizona 85012

12                             (602) 266-2002
NVerderame@PVAzLaw.com

13

14                             Patrick S. Almonrode
   *pro hac vice application forthcoming*

15                             Brown, LLC

16                             111 Town Square Place, Suite 400
Jersey City, NJ 07310

17                             (201) 781-5701
patalmonrode@jtblawgroup.com

18

19                             *Counsel for Plaintiffs Tylor Kelley*

20                             *and Savannah Arteaga, and*
*members of the putative FLSA Class*

21

22

23

24

25

26

27

28

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Tylor Kelley and Savannah Arteaga, individually and on behalf of all others similarly situated | Express Messenger Systems, Inc., d/b/a OnTrac |
| **(b)** County of Residence of First Listed Plaintiff _____ *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____ *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> Nicholas A. Verderame, Plattner Verderame, P.C. <br> 316 E. Flower St., Phoenix 85012 (602) 266-2002 ext 17 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [x] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §§ 201

Brief description of cause:
Plaintiffs bring this action for Defendant's willful misclassification of its delivery drivers as independent contractors, resulting in violations of FLSA

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE: 11/30/2022

SIGNATURE OF ATTORNEY OF RECORD: /s/ Nicholas A. Verderame

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____